# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FILIZ ZEYNEP THOMAS, | ) |
| *Plaintiff* | ) ) ) |
| | ) Civ. No. 15-876 |
| CAROLYN W. COLVIN, **Acting Commissioner of Social Security,** | ) ) ) ) |
| *Defendant* | ) ) ) |

## OPINION AND ORDER

### I. BACKGROUND

Pending before the Court are the parties' Cross-Motions for Summary Judgment. Plaintiff Filiz Zeynep Thomas ("Plaintiff") filed a claim for disability insurance benefits based on allegations of mental and physical impairments. Plaintiff protectively applied for benefits on August 29, 2012, alleging disability since March 1, 2012. Plaintiff's claim was denied initially and upon hearing before an administrative law judge ("ALJ"). In denying her claim for benefits, the ALJ determined that Plaintiff had the following severe impairments: bipolar disorder, gastritis, and Crohn's disease/irritable bowel disease, but that she was not disabled under the Social Security Act because she had "the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she is limited to occupations which allow brief unscheduled access to a restroom during the work day, is limited to simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few work place changes, must work primarily with objects rather than people, no jobs requiring teamwork or interaction

with the public, and is generally limited to one to two- step tasks learned by demonstration" and that considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform. R. 14, 17, 20-21. The Appeals Council denied Plaintiff's request for review, and this appeal followed.

For the following reasons, Plaintiff's Motion for Summary Judgment will be granted and the case remanded for further administrative proceedings consistent with this Opinion and the Motion for Summary Judgment filed by Defendant Carolyn Colvin, Acting Commissioner of Social Security ("the Commissioner") will be denied.

## II. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Determining whether substantial evidence exists is "not merely a quantitative exercise." Gilliland v. Heckler, 786 F.2d 178, 183 (3d Cir. 1986) (citing Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." Id. The Commissioner's findings of fact, if supported by substantial evidence, are conclusive, even if the court would have decided the factual inquiry differently. 42 U.S.C. § 405(g); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the

Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). To determine whether a finding is supported by substantial evidence, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent her from performing her past relevant work; and (5) if the claimant is incapable of performing her past relevant work, whether she can perform any other work which exists in the national economy, in light of her age, education, work experience and residual functional capacity. 20 C.F.R. § 416.920. The claimant carries the initial burden of demonstrating by medical evidence that she is unable to return to her previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court cannot conduct a *de novo* review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with

reference to the grounds invoked by the Commissioner when the decision was rendered. Palmer, 995 F.Supp. at 552; S.E.C. v. Chenery Corp., 332 U.S. 194, 196-97, 67 S. Ct. 1575, 91 L.Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." Brunson v. Astrue, 2011 U.S. Dist. LEXIS 55457, 2011 WL 2036692 (E.D. Pa. Apr. 14, 2011) (citations omitted).

A district court, after reviewing the entire record, may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

### III. LEGAL ANALYSIS.

Plaintiff raises numerous arguments in support of her Motion for Summary Judgment. First she contends that the Administrative Law Judge erred by not setting forth a specific factual basis for each finding as instructed by the appellate court in Baegra v. Richardson, 500 F.2d 309 (3d Cir. 1974) in that: (1) with respect to the ALJ's analysis of Drs. Marston and Chadhoury's treatment notes, "[t]he ALJ does not provide a logical analysis sufficient for this Honorable Court to understand what the ALJ is concluding and why and how he reached this conclusion;" (2) "the overly broad statement that the GAF scores are 'consistent with the totality of the evidence...' provides this Honorable Court no insight on what specific evidence;" and (3) "the ALJ cites the 'claimant's generally good mental status exams,' in support of 'the totality of the evidence.' Ms. Thomas contends that this is an impermissible medical judgment on behalf of the ALJ." Plaintiff's Supporting Brief, pp. 10-12. Second, Plaintiff argues that the ALJ violated

4

HALLEX (Hearings, Appeals and Litigation Manual) I-2-8-25 by referring to a medical text but not offering the text into the record. Id. at pp. 12-13. Third, Plaintiff argues that the ALJ erred in assessing Plaintiff's residual functional capacity in that: (1) the ALJ's summation of the evidence supporting his residual functional capacity determination is internally inconsistent; (2) the objective medical evidence cited to by the ALJ in support of the RFC was scarce and redundant; (3) the ALJ did not analyze Plaintiff's several years of mental health treatment; (4) the ALJ replaced his own judgment with that of a medical professional by concluding that Plaintiff had pursued a "limited level of treatment;" (5) the ALJ wrongly inferred non-disability based on the frequency or mode of Plaintiff's treatment; and (6) the ALJ failed to provide any analysis or discussion of Dr. Marston's medical source statements which Plaintiff believes "captured over an extended period of time, are determinative to her case" and "directly contradict the 'objective evidence' relied on by the ALJ." Id. at pp. 13-15. Fourth, Plaintiff contends that the ALJ erred in his treatment of the credibility and findings of Dr. Marston, Plaintiff's treating psychologist, and Dr. Chaudhary, Plaintiff's treating psychiatrist. Id. at pp.15- 17.

After careful consideration of the evidence of Record, I agree with Plaintiff that the ALJ erred in his treatment of the credibility and findings of treating psychologist Dr. Marston in that the ALJ only discussed Dr. Marston's October 23, 2013 mental medical source statement in his Decision and failed to provide any discussion/analysis of Dr. Marston's statement dated January 14, 2013. In his January 14, 2013 statement, Dr. Marston indicated that Plaintiff's "ability to understand, remember, and carry out instructions" was "affected by her impairment" and that her restriction for the following work-related mental activities was "marked:" her ability to understand and remember short, simple instructions, to carry out short, simple instructions, to understand and remember detailed instructions, to carry out detailed instructions, and to make

5

judgements on simple work-related decisions. R. 589. Dr. Marston then explained that the following medical/clinical findings supported this assessment: "<u>Significant</u> memory problems as reflected in neuropsych eval report. Also <u>significant</u> difficulties handling emotional distress." R. 589 (emphasis in original). Dr. Marston further indicated that Plaintiff's "ability to respond appropriately to supervision, co-workers, and work pressures in a work setting" was affected by her impairment" and that her restriction for the following work-related mental activities was "marked:" her ability to interact appropriately with the public, supervisors, and co-workers, and to respond appropriately to work pressures in a usual work setting, and to respond to changes in a routine work setting. R. 589. Dr. Marston then explained that the following medical/clinical findings supported this assessment: "Significant problems with memory and also handling emotional distress." R. 589. Dr. Marston concluded by stating that no other capabilities were affected by Plaintiff's impairment and that Plaintiff can manage benefits in her own interest. R. 590.

This statement completed by Dr. Marston was essentially a "check-the-box" form. While in general such "check-the-box" forms are "weak evidence at best," <u>see</u> <u>Mason v. Shalala</u>, 994 F.2d 1058, 1065 (3d Cir. 1993); <u>Grogan v. Commissioner of Social Security</u>, 459 F. App'x 132, 138 n. 7 (3d Cir. 2012), nevertheless an ALJ must analyze all evidence relevant to a claimant's case and adequately explain his reasons for declining to credit "pertinent evidence" which favors a claimant's position. <u>Burnett v. Commissioner of Social Security</u>, 220 F.3d 112, 121 (3d Cir. 2000). "'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" <u>Burnett</u>, 220 F.3d at 121-122 (<u>quoting</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 705 (3d Cir. 1981)). Without the same, a reviewing court cannot make a proper determination. <u>Id</u>. Dr. Marston's January 2013 statement is relevant evidence that

6

is in conflict with the ALJ's residual functional capacity determination. Consequently, the ALJ erred when he failed to mention, let alone evaluate, Dr. Marston's January 13, 2013 statement in reaching his decision that Plaintiff was not disabled and this matter must be remanded in order for the statement to be properly evaluated.

I further agree with Plaintiff that the ALJ erred when he negatively assessed Plaintiff's mental health treatment as a "limited level of treatment" and as "conservative treatment." See R. 19. While the ALJ accurately concluded that Plaintiff did not have any inpatient hospitalizations or emergency room visits during the relevant time period, the record also shows that Plaintiff has taken Depakote and Xanax to combat her mental health issues for years and that during the relevant time period, she consistently was treated by mental health professionals, attending counseling sessions with psychologist Dr. Marston bi-weekly, and seeing psychiatrist Dr. Chaudhary every one to three months. As such, her mental health treatment was neither limited nor conservative. See Mason v. Colvin, 2013 WL 5278932 at *6 (E.D. Cal. Sept.18, 2013) (concluding treatment was not "conservative" where claimant took prescription antidepressants and anti-psychotic medication for almost two years and, though not hospitalized during this time, received mental health treatment by a psychiatrist and a psychiatric social worker for a 14 month period).

Turning to the remainder of Plaintiff's arguments, I disagree with the Plaintiff's contention that with respect to the ALJ's analysis of Drs. Marston and Chadhoury's treatment notes, the ALJ does not provide a logical analysis sufficient for this Honorable Court to understand what the ALJ is concluding and why and how the ALJ reached this conclusion as well as the related argument that in assessing Plaintiff's residual functional capacity, the ALJ failed to analyze Plaintiff's several years of mental health treatment. To

7

the contrary, I find that the ALJ provided a sufficient analysis of Plaintiff's mental health treatment, including Drs. Marston and Chadhoury's treatment notes, such that I could understand what the ALJ was concluding and why and how he reached his conclusions concerning these treatment notes. See R. 18 (wherein the ALJ concluded that "[n]otes from the claimant's psychologist and treating physician revealed the claimant experienced difficulty with focusing, mood problems, emotional distress, depressed mood, lack of interest, decreased energy, psychomotor agitation, memory impairment, and panic attacks (Exhibits 16F, 17F, 23F, and 24F). However, the mental status examinations have shown good hygiene, no suicidal or homicidal ideation, no thought disorder, intact insight and judgment, intact recall, average intelligence, and intact attention and concentration (Exhibits 16F, 17F, and 18F)").

I also disagree with Plaintiff's argument that the ALJ's description of Plaintiff's mental status exams as "generally good" was "an impermissible medical judgment on behalf of the ALJ." See R. 11. To the contrary, I find that the ALJ sufficiently and appropriately explained in his Decision what he meant by Plaintiff's "generally good" mental status exams when he stated: "the mental status examinations have shown good hygiene, no suicidal or homicidal ideation, no thought disorder, intact insight and judgment, intact recall, average intelligence, and intact attention and concentration." See R. 18.

I also disagree with Plaintiff's argument that "[t]he overly broad statement that the GAF scores are 'consistent with the totality of the evidence….' provides this court with no insight on what specific evidence the ALJ is referencing." Plaintiff's Supporting Brief, p. 11. To the contrary, the ALJ adequately explained how the GAF scores in the Record, which were stated by Dr. Marston in a February 23, 2012 Note were "consistent with the totality of the evidence...."

when the ALJ concluded: "[t]hese GAF scores have been given great weight as they are consistent with the totality of the evidence, including the claimant's generally good mental status examinations, and the opinion of the treating psychologist[1] as mentioned below." R. 18.

I further disagree with Plaintiff's position that the ALJ violated HALLEX I-2-8-25 when he failed to make the American Psychiatric Association Diagnostic Manual of Mental Disorders ("DSM") part of the record after he equated Plaintiff's GAF score of 52 to "moderate limitations." To the contrary, I find that it was not necessary to make the DSM part of the record simply because the ALJ explained what was meant by Plaintiff being given a GAF score of 52. As I recently explained in Blon v. Colvin, 2016 WL 2937015 (W.D. Pa. May 20, 2016):

> HALLEX states that an ALJ may not cite medical publications as the authority for resolving any issue, but if he must, the material must be submitted to claimant for review and made part of the record. HALLEX I-2-8-25(D). An ALJ may refer to medical texts or publications, such as the DSM, for limited purposes, such as defining terms; he may not, however, use them for substantive evidence if not made part of the record. In this case, the ALJ clearly referred to the DSM as a way of explaining the Global Assessment of Functioning ("GAF") scale. The DSM was not used to resolve an issue in the case.

Blon, 2016 WL 2937015, *3 (citations omitted). See also Beacon v. Colvin, 2014 WL 5529762, *7 (W.D. Pa. Nov. 3, 2014) (J. Ambrose) ("[a]s an initial matter, internal agency manuals such as the HALLEX lack the force of law and are not binding on the Social Security Administration or the courts. Moreover, and in any event, the ALJ in this case did not use the DSM–IV to 'resolve any issue.' Rather, he cited to the DSM–IV simply to define a phrase and explain the

---

[1] It must be noted that it was the opinion of the <u>state agency</u> psychologist, Dr. Urbanowicz, not the opinion of the <u>treating</u> psychologist, Dr. Marston, with which the GAF scores of 54 and 62 were consistent. I find that this misstatement was a scrivener's error on the part of the ALJ in light of his analysis the two (2) medical opinions in the next paragraphs of his Decision, specifically wherein the ALJ gives the treating psychologist's opinion "little weight" in part because it conflicts with the "good GAF scores," and gives the state agency psychologist's opinion "great weight as it is consistent with the other opinion evidence described above, the claimant's good mental status examinations, and the claimant's testimony that she might be able to do manual jobs." R. 19.

9

value of Plaintiff's GAF scores already contained in Dr. Orr's treatment notes."). Moreover: "'Plaintiff was represented by counsel at both the administrative and appellate levels, who, in their practice of Social Security Disability law, should be inherently aware of or have access to the GAF Scale,' and such action by the ALJ is not grounds for remand. Plaintiff does not explain how the ALJ's reference to the DSM caused her prejudice. Accordingly, I find no fatal error in this regard." Blon, 2016 WL 2937015 at *3 (citations omitted).

I also disagree with Plaintiff's argument that the ALJ erred in assessing Plaintiff's residual functional capacity in that the ALJ's summation of the evidence supporting his residual functional capacity determination is internally inconsistent and the objective medical evidence cited to by the ALJ in support of the RFC was scarce and redundant. The ALJ's summation of the evidence simply was not internally inconsistent and the objective medical evidence cited to by the ALJ in support of his determination of Plaintiff's residual functional capacity, which as it concerned Plaintiff's mental impairments consisted of Drs. Chaudhary and Marston's treatment notes, was neither scarce nor redundant.

Finally, I disagree with Plaintiff's contention that the ALJ erred in his treatment of the credibility and findings of Dr. Chaudhary, Plaintiff's treating psychiatrist. As an initial matter, to the extent that by credibility Plaintiff is referring to an opinion rendered by Dr. Chaudhary, the Record does not contain any such opinion by Dr. Chaudhary. Moreover, upon review of Dr. Chaudhary's treatment notes, his notes supported the ALJ's residual functional capacity determination and ultimately, the ALJ's conclusion that Plaintiff is not disabled. See R. 623-631 and 650-665.

10

## IV. CONCLUSION.

Having concluded that the ALJ erred when he failed to provide any analysis or discussion of Dr. Marston's medical source statement dated January 14, 2013 and when he incorrectly assessed Plaintiff's mental health treatment as a "limited level of treatment" and as "conservative treatment," I further find that there is not substantial evidence in the Record to support the ALJ's decision that Plaintiff is not disabled under the Social Security Act. Therefore, the Plaintiff's motion for summary judgment shall be granted and the Commissioner's motion for summary judgment shall be denied. An appropriate Order follows:

## **ORDER OF COURT**

THEREFORE, this 30th day of August, 2016, it is ordered that Plaintiff's Motion for Summary Judgment (Docket No. 9) is granted and Defendant's Motion for Summary Judgment (Docket No. 13) is denied.

It is further ordered that the decision of the Commissioner of Social Security is hereby vacated and the case is remanded for further administrative proceedings consistent with the foregoing opinion.

BY THE COURT:

S/Donetta W. Ambrose
Donetta W. Ambrose
United States Senior District Judge